IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

           Plaintiff/Respondent,

v.                                      No. CIV 12-813 JEC/LFG
                                      No. CR  99-1298 JEC

ANTONIO MADRID,

           Defendant/Movant.

## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

1.      On July 25, 2012, Movant Antonio Madrid ("Madrid") filed a motion to vacate, set

aside or correct sentence by a person in federal custody, under 28 U.S.C. § 2255. [Doc. 1.] Madrid

is represented by counsel.  On September 28, 2012, the United States filed a response to the § 2255

motion, or in the alternative, a response to Madrid's request brought under 28 U.S.C. § 1651.  [Doc.

7].  On October 17, 2012, Madrid filed a reply.[2] [Doc. 8.]  Madrid is not in custody, and according

to the government, was released from custody on July 3, 2001, over eleven years ago. [Doc. 7, at

4.] However, on May 1, 2012, ICE placed Madrid in removal proceedings. [Doc. 1, at 5, 13]

---

[1]Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.  *See, e.g.*, Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).

[2]Although the reply was due by the deadline of October 15, 2012, the Court elects to consider it.

2.      In making its findings and recommendation on this matter, the Court examined all of the pleadings and attachments in this civil proceeding and the related criminal case [No. CR 99-1298].[3]  To the extent possible, the Court reviewed any available transcripts of the pertinent criminal proceedings and hearings, but due to the age of the criminal proceeding, not all docket entries were scanned and available for review.  Because it is possible to resolve the issues on the pleadings, and the record establishes conclusively that Madrid is not entitled to relief, the Court concludes that no evidentiary hearing is necessary.  *See* 28 U.S.C. § 2255; United States v.  Kennedy, 225 F.3d 1187, 1193 (10th Cir. 2000), *cert. denied*, 532 U.S. 943 (2001).  After carefully considering the pleadings, attachments, argument by parties and the pertinent law, the Court recommends that Madrid's § 2255 motion be denied and dismissed, with prejudice.

### Background

3.      On November 16, 1999, an Indictment was returned against Madrid and other defendants. [CR Doc. 1.] On November 29, 1999, an arrest warrant was returned executed as to Madrid, who was arrested on November 18, 1999.  [CR Doc. 16.]  On December 7, 1999, Madrid was arraigned and initially pled not guilty. [CR Doc. 22.] On December 10, 1999, Attorney Cesar Pierce-Varela ("Varela" or "Attorney Varela") entered an appearance on behalf of Madrid. [CR Doc. 23.]

4.      On February 3, 2000, Senior District Court Judge Hansen accepted Madrid's guilty plea to an Information.[4] [CR Doc. 54.] On the same date, Madrid's written plea agreement was

---

[3]The Court refers to pleadings in the criminal case, No. CR 99-1298 JEC as CR Doc. __. Pleadings in this civil habeas proceeding are referred to as Doc. ___.

[4]The transcript of the plea hearing is not available due to the age of the criminal proceeding. [Doc. 7, at 2 n 3.]

entered. [CR Doc. 54, Doc. 7, Ex. 1.] The written plea agreement provides that Madrid agreed to

plead guilty to a one-count Information charging: 18 U.S.C. § 1546(a): Fraud and Misuse of

Immigration Documents; and 18 U.S.C. § 2: Aiding and Abetting. [Doc. 7, Ex. 1, p. 2.]

5.      According to the government [Doc. 7, at ¶ I], from about June 1, 1997 to about

February 1, 1999, Madrid "engaged in a conspiracy to obtain fraudulent immigration documents for

undocumented aliens, allowing them to work in the United States."

> Specifically, during that time frame, [Madrid] received
> undocumented immigrants from Florida from a well-known
> immigrant smuggler from Hatch, New Mexico, Rogelio Chairez
> (Chairez). [Madrid] knowingly assisted the undocumented
> immigrants obtain false and fraudulent alien registration cards by
> directing the immigrants to persons in LaBelle, Florida who he knew
> would manufacture false documents for the immigrants. The false
> documents enabled the immigrants to work in the Florida orange
> groves.

[Doc. 7.] As part of the plea agreement, Madrid admitted to his involvement in the conspiracy:

> From the middle of June [1997] until about early 1999 I would tell
> people in Florida where they could obtain false documents. I knew
> these folks were undocumented because they were looking for
> documents to work. I felt bad for them, so I would tell them a place
> I knew about that provided such documents. I am very sorry for my
> conduct, I did not realize it was such a serious crime, but if the Court
> gives me an opportunity to prove myself, I promise never to do
> anything like this.

[Presentencing Report ("PSR") at ¶ 53.]

6.      According to an affidavit provided by his attorney [Doc. 7-2, Ex. 2, Aff. of Cesar

Pierce-Varela, at ¶ 2], Madrid was a Legal Resident Alien at the time of his guilty plea. His written

plea agreement makes no mention that Madrid might be removed from the United States as a

consequence of the guilty plea. [Doc. 7-1, Ex. 1.] However, Attorney Varela provided affidavit

testimony that in negotiating plea agreements for clients who are Legal Resident Aliens, Varela's

habit and practice "has always been to advise them that by pleading guilty they could be subject to deportation proceedings." [Doc. 7-2, at ¶ 2.] Varela stated that he did not specifically recall advising Madrid about the potential immigration consequences attendant to his guilty plea due to the age of the case, but that he was "confident that [he] did so because it was [his] habit and practice to do so." [Id., at ¶ 4.]

7.       The plea agreement provides, in part, that Madrid was entitled to a reduction of three levels from the base offense level as a result of his acceptance of personal responsibility for his criminal conduct.  The plea agreement also sets out a maximum penalty of imprisonment for a period not to exceed ten years. [Doc. 7-1, Ex. 1, at 2.]

8.       On June 21, 2000, Circuit Judge Bobby R. Baldock sentenced Madrid and imposed a period of 10 months incarceration with no term of supervised release. [CR Doc. 91.] On July 26, 2000, District Judge Martha Vazquez entered Judgment documenting Madrid's 10-month period of incarceration with no term of supervised release. [CR Doc. 93.] Madrid did not appeal his conviction.  Madrid was permitted to voluntarily surrender himself on September 11, 2000 at Reeves County Enforcement Center, in Pecos, Texas. [CR Doc. 99.]

9.       According to the government, on July 3, 2001, Madrid was released from custody.

10.      On May 1, 2012, ICE placed Madrid in deportation proceedings. [Doc. 1, at 5, 13.]

11.      On July 25, 2012, Madrid filed the present § 2255 motion, or in the alternative, a petition for a writ of *coram nobis* under 28 U.S.C. § 1651. [Doc. 1, at 13.] In the § 2255 motion, Madrid states that he "had no idea that ICE could deport me based on this conviction until ICE [p]laced me in deportation proceedings on May 1, 2012." [Doc. 1, at 5.] Madrid contends that attorney Varela provided ineffective assistance of counsel with respect to the plea agreement because counsel allegedly failed to inform Madrid that pleading guilty to the aggravated felony

4

made him deportable and ineligible for discretionary relief from removal. Madrid further asserts that had he been properly informed before pleading guilty, he would not have pled guilty or signed the plea agreement. Madrid states that he "has lived in the U.S. most of his adult life and his home and children all reside here and he owns a business here in the United States." [Doc. 1, at 5.]

12.     In its response, the government argues that Madrid's § 2255 motion should be dismissed, with prejudice, because Madrid was not in custody at the time he filed his motion. Thus, in accordance with the pertinent legal requirements, this Court lacks jurisdiction over the § 2255 proceeding. [Doc. 7, at 4.] Second, the government asserts that the § 2255 motion is untimely as it was not filed within the one year statute of limitation from the date Madrid's conviction became final. [Doc. 7, at 4-5.] Third, the government contends that the § 2255 motion must be dismissed on the merits as to the ineffective assistance of counsel claim. [Doc. 7, at 6-10.]

13.     Alternatively, the government argues that Madrid's petition for writ of *coram nobis* should be denied and that the entire petition should be dismissed with prejudice. [Doc. 7, at 12-14.]

14.     In Madrid's reply [Doc. 8], he makes little mention of § 2255 and no mention of a petition for writ of *coram nobis*. Madrid primarily argues that because he pled guilty to an aggravated felony, he was "clearly deportable." [Doc. 8, at 4.] Thus, in accordance with Padilla v. Kentucky, 130 S.Ct. 1473 (2010), Madrid asserts that his attorney was required to give "specific advice" to him regarding the immigration consequences of his guilty plea. [Id.] Madrid further contends that even if his trial counsel's affidavit is to be believed, trial counsel did not recall giving Madrid the required "specificity" now required under Padilla. [Id., at 5.][5]

---

[5]Madrid's counsel goes on to include apparently boilerplate language concerning the ineffective assistance of counsel standard and refers to his client as a female. "In her motion, Madrid claims that she would not have pleaded guilty if she had known that her guilty plea would result in her removal." [Doc. 8, at 5.]

5

15. Madrid briefly alludes to whether the principles announced in Padilla apply retroactively, and, as a result, to Madrid's circumstances. Madrid states that the issue is now before the United States Supreme Court as the Court granted certiorari on April 30, 2012, in Chaidez v. United States. [Id.] Madrid is "confident that the Padilla decision will apply to persons whose convictions became final before the announcement of the Padilla decision." [Id.] Madrid notes that if the Court is concerned about the issue of retroactivity, then it should consider staying a final decision in this habeas proceeding until the Supreme Court has issued a ruling. [Id.]

**Analysis**

**I.    LACK OF JURISDICTION OVER § 2255 PETITION**

*A.    Legal Standard:*

16. "The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are in custody . . . ." Maleng v. Cook, 490 U.S. 488, 490 (1989) (*per curiam*) (quotation omitted); *see also* 28 U.S.C. § 2241(c). Thus, district courts generally do not have jurisdiction to entertain petitions for habeas relief on fully expired sentences. *See id.,* 490 U.S. at 490-91.

17. A 2255 petitioner must be "in custody" at the time his motion is filed. United States v. Bustillos, 31 F.3d 931, 933 (10th Cir. 1994). A federal district court has jurisdiction over a §2255 motion only if the movant is "in custody" under a sentence of the federal court. United States v. Hernandez, 94 F.3d 606, 613 (10th Cir. 1996).

> A collateral challenge under 28 U.S.C. 2255, like a habeas corpus proceeding, is available only to attack (1) a federal sentence under which the defendant is ***in custody at the time of initiating the petition***, or (2) a federal sentence that has been ordered to run consecutively to another sentence under which the defendant is in custody at the time of filing the challenge.

6

Bustillos, 31 F.3d at 933 (emphasis added) (internal citations omitted).

      **B.**   ***Discussion:***

      18.    Here, Madrid's sentence from 2000-2001 fully expired many years before he filed this § 2255 motion in 2012.  Therefore, to the extent that Madrid attempts to challenge that previous sentence under § 2255, this Court lacks jurisdiction to hear the claim because he was no longer in custody under that sentence when he filed for habeas relief in this Court.

      19.    Stated differently, Madrid failed to meet his burden to establish the federal court's subject matter jurisdiction over this case because he alleged no facts demonstrating that he was in custody when he filed this habeas petition.  *See* Bustillos, 31 F.3d at 933 (burden is on party seeking to invoke federal court's jurisdiction to demonstrate facts supporting jurisdiction).

      20.    In the reply, Madrid continues to identify his petition as one being brought under § 2255, but fails to challenge the government's arguments as to lack of subject matter jurisdiction or timeliness problems.  His position as to the merits of an ineffective assistance of counsel claim is conclusory and unpersuasive.

      21.    Based on these findings, the Court recommends that Madrid's § 2255 motion be denied and dismissed, with prejudice, for lack of subject matter jurisdiction.  Because of this recommendation, the Court does not proceed, at this time, to address the government's position that the motion is time-barred or fails on the merits.  *See, e.g.,* Jones v. Grant, 5 F. App'x 836, 838 (10th Cir. Mar. 1, 2001) (unpublished) (because habeas petitioner was not "in custody" as required by 28 U.S.C. § 2254(a), district court lacked subject matter jurisdiction over petition and therefore, could not consider the merits of petitioner's claims therein).

II.    **PETITION FOR WRIT OF ERROR *CORAM NOBIS***

    *A.    Legal Standard*:

22.    Notwithstanding the Court's lack of jurisdiction over Madrid's § 2255 motion, a petitioner sometimes may collaterally challenge a conviction via a petition for writ of error *coram nobis,* even though the petitioner is not currently "in custody" as to that conviction.  *See, e.g.*, Bustillos, 31 F.3d at 934 (noting that relief under *coram nobis* may be available regardless of whether the movant was in custody on the challenged sentence at the time he initiated this § 2255 proceeding).  *See also* Martinez-Arellano v. United States, 345 F. App'x 379, 381 n.5 (10th Cir. Sept. 28, 2009) (unpublished) ("[w]hile the federal rules have replaced many common law writs, the writ of error *coram nobis* remains to address allegedly invalid convictions which have continuing consequences when the petitioner has served his sentence and is no longer "in custody" for purposes of seeking relief under 28 U.S.C. § 2255."), *cert. denied*, 130 S.Ct. 1746 (2010).

23.    However, the availability of a writ of error *coram nobis* is extremely circumscribed, and the movant must carry a substantive burden to justify relief under the writ.  *See* United States v. Williamson, 806 F.2d 216, 222 (10th Cir. 1986) ("absent a complete miscarriage of justice, and where there have been no serious, fundamental violations of [the petitioner's] constitutional rights, society's interest in finality would not be served by granting [coram nobis]").  The writ of error *coram nobis* is available "only to correct errors resulting in a complete miscarriage of justice, or under circumstances compelling such action to achieve justice." Bustillos, 31 F.3d at 934 (citations omitted).  *See* United States v. Bruno, 903 F.2d 393, 396 (5th Cir. 1990) (explaining that a *coram nobis* petitioner must demonstrate "that he is suffering civil disabilities as the result of the criminal conviction").

24.     The United States Supreme Court suggested three prerequisites to the granting of a writ of *coram nobis:* (1) the petitioner exercised diligence in bringing his claim; (2) other remedies and forms of relief are unavailable or inadequate; and (3) errors of a fundamental nature need to be corrected.  Embrey v. United States, 240 F.App'x 791, 794 (10th Cir. July 9, 2007) (unpublished) (*citing* United States v. Morgan, 346 U.S. 502, 511-12 (1954)).  In Carlisle v. United States, 517 U.S. 416, 429 (1996), the Court further noted that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate.") (quotation omitted).

### B.     *Discussion:*

25.     Here, Madrid argues that his 2000 conviction should be vacated because Attorney Varela did not advise him when Madrid pled guilty that a guilty plea to the charge could result in a subsequent deportation.  Madrid initially asserted that the case of Padilla, 130 S.Ct. 1473 "appears to apply retroactively" to his conviction and supports Madrid's contention that the plea should be set aside. [Doc. 1, at 13.] In the reply, Madrid is certain that the Supreme Court will rule in his favor on the issue of retroactive application of Padilla.

26.     The United States Supreme Court held, in Padilla, that "before a non-citizen criminal defendant enters a guilty plea, his counsel has a duty under the Sixth Amendment to inform him 'whether his plea carries a risk of deportation.'" United States v. Hong, 671 F.3d 1147, 1149 (10th Cir. 2011), as amended (Sep 01, 2011), *rehearing and rehearing en banc denied* (Oct 11, 2011) (*quoting* Padilla, 130 S.Ct. at 1486) (internal citation omitted).  The facts in Padilla are distinguishable from those here.  For example, Padilla's attorney not only failed to inform him about the consequences of deportation, but affirmatively misinformed the defendant that he need not

9

worry about his immigration status due to his long-term residency in the United States.  Padilla, 130 S.Ct. at 1478.

27.     Under these circumstances, the Supreme Court determined that constitutionally competent counsel would have advised Padilla that his conviction for drug distribution made him subject to automatic deportation.  However, the Supreme Court did not decide whether counsel was constitutionally ineffective, as it remanded on the question of whether Padilla suffered prejudice. Id.  The Court noted that it was "often quite difficult for petitioners like Padilla, who have acknowledged their guilt, to satisfy the Strickland [v. Washington, 466 U.S. 668, (1984)] prejudice prong.  Id. at 1485 n.12.  For one reason, the petitioner must convince a court that to reject the plea bargain would have been rational under the circumstances.  Id. at 1485.  Often those who collaterally attack their guilty pleas lose the benefit of the bargain they obtained as a result of the plea.  Such challenges may result in less favorable outcomes for a defendant.  Id. at 1485-86.  See also Missouri v. Frye, 132 S.Ct. 1399, 1409 (when "defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"), cert. denied, 132 S.Ct. 1789 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

28.     In order to proceed with his writ of error coram nobis, Madrid must first show that the holding in Padilla applies retroactively since Madrid's conviction was final years before the Supreme Court issued the Padilla decision in 2010.  The Tenth Circuit Court of Appeals, as well as other federal courts, have observed that the Supreme Court in Padilla did not decide that its ruling applied retroactively to collateral attacks.  United States  v. Guerrero-Castro, 2012 WL 2688810, at *3 (10th Cir. July 9, 2012) (unpublished) (citing Padilla, 130 S.Ct. 1473).  See Rojas v. United

States, 2012 WL 3150052, at *3 (S.D. Fla. July 16, 2012) (unpublished) (noting that Supreme Court "did not decide whether Padilla should be applied retroactively").

29.     In Rojas, the district court observed that federal and state courts are divided over whether the Padilla holding applies retroactively to convictions that became final before the 2010 decision. Rojas, at *3. For example, the Third Circuit held that the Padilla rule was retroactive. Id. (citing United States v. Orocio, 645 F.3d 630, 641 (3d Cir. 2011)). In contrast, however, the Seventh, Tenth, and Fifth Circuits concluded that the Supreme Court recognized a new constitutional right in Padilla that should ***not*** apply retroactively. Id. at *4-5 (listing cases).

30.     Indeed, in Guerrero-Castro, the Tenth Circuit stated it "recently held that [Padilla] does not apply retroactively." Guerrero-Castro, 2012 WL 2688810, at *3 (citing Hong, 671 F.3d at 1150). In Hong, the Tenth Circuit concluded that Padilla announced a new rule of constitutional law that did not apply retroactively on collateral review in accordance with the framework set out in Teague v. Lane, 489 U.S. 288, 310 (1989) (plurality opinion). Hong, 671 F.3d at 1153-58. In so holding, the Tenth Circuit expressly disagreed with and rejected the Third Circuit's contrary conclusion in Orocio. Id. at 1155-56.

31.     The Tenth Circuit decision in Hong addressed whether Padilla impacted the timeliness of a § 2255 motion. The movant, in Hong, argued that his § 2255 motion was timely because Padilla was decided on March 31, 2010, and his § 2255 motion was filed within one year of that decision, *albeit* more than two years after his conviction became final. Id. at 1150. The Tenth Circuit, as noted above, concluded that Padilla did not apply retroactively to permit the filing of Hong's § 2255 motion.

32.     This Court finds that the fact that Hong addressed retroactivity of Padilla in relation to a § 2255 habeas motion rather than to a motion for writ of error *coram nobis* makes little

11

difference.  While the Tenth Circuit did not address that specific issue in <u>Hong</u>, the Seven Circuit

did in <u>Chaidez v. United States</u>, 655 F.3d 684 (7th Cir. 2011), *cert. granted*, 132 S.Ct. 2101 (Apr. 30,

2012).  In <u>Chaidez</u>, the movant filed a motion for a writ of *coram nobis* in her criminal case.  She

sought to have <u>Padilla</u> applied retroactively to her case on collateral review since the criminal case

against her was final on direct review by the time <u>Padilla</u> was decided.  <u>Id.</u> at 686-88.  Like Madrid,

Chaidez alleged ineffective assistance of counsel in connection with her decision to plead guilty,

claiming that her defense attorney failed to inform her that a guilty plea could lead to removal

proceedings.  Similar to Madrid, Chaidez also asserted that she would not have pled guilty if her

attorney had informed her of the immigration consequences of such a plea.  In deciding that <u>Padilla</u>

did not apply retroactively, the Seventh Circuit reasoned, in part:

> Because a writ of error *coram nobis* affords the same general relief
> as a writ of habeas corpus, <u>Howard v. United States</u>, 962 F.2d 651,
> 653 (7th Cir. 1992, we proceed as we would in a habeas case.  *See*
> <u>United States v. Mandanici</u>, 205 F.3d 519, 527 (2nd Cir. 2000)
> (applying <u>Teague</u> in a case involving a *coram nobis* petition); <u>United</u>
> <u>States v. Swindall</u>, 107 F.3d 831, 834 (11th Cir. 1997) (same).

<u>Id.</u> at 687.  *See also* <u>United States v. Castillo</u>, 2012 WL 2880573 (N.D. Ind. July 13, 2012)

(unpublished) ("The writ [of *coram nobis*] affords the same general relief as a writ of habeas corpus;

however, while a defendant must be in custody under a court sentence to pursue a writ of habeas

corpus, a writ of error *coram nobis* is available to a defendant after release from custody.")

However, as noted in Madrid's reply, the Supreme Court accepted *certiorari* on the question of

retroactive application of <u>Padilla</u> and has not yet ruled.

   33. Based on its analysis, the Court does not accept defense counsel's invitation to stay

a recommendation in this matter pending a decision by the Supreme Court in <u>Chaidez</u>.  The Court

concludes that the holding in <u>Padilla</u> does not apply retroactively to Madrid's conviction and that his writ of error *coram nobis* should be denied.

34.     However, even if the Supreme Court determines that <u>Padilla</u> applies retroactively as to *coram nobis* petitions, Madrid's petition for writ of error fails for alternative reasons.  First, he did not and cannot demonstrate that he exercised diligence in bringing his claim.  His conviction was final approximately ten to eleven years ago, and yet, he took no action by way of direct appeal or habeas proceeding.  *See* <u>Embrey</u>, 240 F.App'x at 794, 795 (Embrys could have raised issues in original criminal proceeding, but did not).  In addition, <u>Padilla</u> was decided in March 2010, but Madrid did not file this action, either as a motion under § 2255 or *coram nobis*, until over two years after the Supreme Court decision.

35.     A petitioner may not bring his claim under *coram nobis* unless § 2255 is "inadequate or ineffective." <u>Williams v. United States</u>, 323 F.2d 672, 673 (10th Cir. 1963), *cert. denied,* 377 U.S. 980 (1964).  "[T]he fact that section 2255 is no longer available does not mean that [§ 2255] remedies available at one point were not adequate or effective, it merely means that [Defendant] did not pursue them in a timely manner." <u>Braun v. Gallegos</u>, No. 02-1292, 58 F. App'x, 7812002 WL 31895074, at *1 (10th Cir. Dec. 31, 2002) (unpublished) (citations omitted).  Here, the Court finds that Madrid did not timely pursue the § 2255 remedies that might have been available to him.  Thus, he failed to show that other forms of relief were unavailable.

36.     In addition, Madrid did not demonstrate that an error of a "fundamental nature" must be corrected.  *See* <u>Embrys</u>, 240 F.App'x at 794.

> The proceedings leading to the petitioner's underlying criminal conviction are presumptively correct . . ., and the petitioner has the burden of asserting a jurisdictional or constitutional error resulting in a "complete miscarriage of justice." . . . To meet this burden, a

> petitioner must, among other things, assert his or her "innocence of
> the charge."

Id. (citations omitted).  Madrid did not assert his innocence of the charges for which he was convicted.  Indeed, he admitted he committed the criminal acts and apologized for his actions.  Thus, his conviction cannot be said to represent a "complete miscarriage of justice."  For these reasons, Madrid cannot demonstrate that he is entitled to relief under a writ of error of *coram nobis*.

37.     Also, even if Madrid could satisfy the prerequisites to granting a writ of *coram nobis*, he fails to demonstrate that he was prejudiced by his counsel's alleged failure to inform him that his guilty plea could affect his immigration status.  This is particularly true here where, as stated in the written plea agreement, Madrid faced a potential maximum penalty of ten years of incarceration.  Instead of being imprisoned for years, Madrid's plea agreement gave him the benefit of serving a **10-month** term of incarceration, without any term of supervised release imposed.

38.     It is difficult to believe that Madrid would have elected to proceed to trial in the face of a possible 10-year term of incarceration, especially in view of strong evidence of criminal conduct.  The government stated that the evidence against Madrid included informants identifying him as a co-conspirator who received illegal immigrants from Chairez; phone activity indicating phone calls back and forth between Madrid and Chairez; and a Western Union wire transfer in the amount of $700.00 from Madrid to Chairez.  [*See* Doc. 7, at 8.] In fact, Madrid, in his habeas petition, did not state he would have proceeded to trial.  He merely said he would not have entered into the beneficial plea agreement that he did.  He did not assert that his attorney should or could have negotiated a better agreement than the one Madrid signed.  Thus, even if Madrid could overcome all of the hurdles he faced by bringing a writ of error *coram nobis*, he did not demonstrate any possibility of prejudice under the Strickland standard.  In order to show prejudice, Madrid has

14

to "show that there [was] a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill</u>, 474 U.S. at 59.  Madrid did not demonstrate that would have insisted on going to trial.  He did not even make the allegation. Moreover, as noted by the Supreme Court in <u>Padilla</u> a guilty plea often makes it "quite difficult for petitioners . . . to satisfy the <u>Strickland</u> prejudice prong .  *See* <u>Padilla</u>, 130 S.Ct. at 1485 n.12.

### **Recommended Disposition**

That Madrid's § 2255 motion and petition for writ of *coram nobis* be denied and that this matter be dismissed, with prejudice.

That under Rule 11 of the Rules Governing Section 2255 cases and 28 U.S.C. § 2253(c)(2), a certificate of appealability not issue because Madrid failed to make a substantial showing that he has been denied a constitutional right.


Lorenzo F. Garcia
United States Magistrate Judge